Martin K. Banks (5443)
Chaunceton Bird (16402)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
801-257-7924
*mbanks@parrbrown.com*
*cbird@parrbrown.com*

*Attorneys for Plaintiffs*

**THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH**

| | |
|---|---|
| DOUGLAS C. HENRIE, an individual; and KASSIDI M. HENRIE, an individual, | **COMPLAINT** |
| Plaintiffs, | |
| v. | JURY DEMANDED |
| NATIONSTAR MORTGAGE, LLC D/B/A MR. COOPER, a foreign limited liability company; and PRIMARY RESIDENTIAL MORTGAGE, INC., a foreign business corporation, | |
| Defendants. | Case No.: Judge: |

Pursuant to Rules 7 and 8 of the Federal Rules of Civil Procedure, Plaintiffs Douglas C. Henrie and Kassidi M. Henrie (collectively, the "**Henries**") file this Complaint against Defendants Nationstar Mortgage, LLC d/b/a Mr. Cooper ("**Mr. Cooper**"), and Primary Residential Mortgage, Inc. ("**Primary Residential**") (both defendants are referred to collectively as "**Defendants**").

## INTRODUCTION

Defendants bungled the Henries' home mortgage loan by sending transfer and delinquent payment notifications to the incorrect address, failing to honor or effectively transfer the Henries' autopay instruction and information, and subsequently punishing the Henries for Defendants' failures by providing credit reporting agencies with damaging financial allegations against the Henries. In so doing, Defendants breached their agreements with the Henries and violated various federal consumer lending laws.[1] The Henries now turn to the court in an effort to receive the relief and remediation that Defendants refuse to provide.

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Douglas C. Henrie is an individual residing in Mapleton, Utah.

2.    Plaintiff Kassidi M. Henrie is an individual residing in Mapleton, Utah.

3.    Defendant Mr. Cooper is an assumed or branding name (DBA, or "doing business as") of Nationstar Mortgage, LLC. Upon information and belief, Nationstar Mortgage, LLC is a Delaware foreign limited liability company with at least two member-managers: Jay Bray and Kurt G. Johnson, both of whom are Texas residents.

4.    Upon information and belief, Defendant Primary Residential Mortgage, Inc. is a foreign business corporation incorporated in Nevada with its headquarters in Salt Lake City, Utah.

5.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

---

[1] Namely, various sections of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.*, and its implementing regulations 12 C.F.R. Part 1024.

**COMPLAINT**

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this is the state in which a substantial part of the events or omissions giving rise to the claim occurred.

## BACKGROUND FACTS

### *The Henries and the Loans*

7.      In 2022, the Henries owned two residential investment properties, one in Spanish Fork City[2] and another Lehi City[3] (the "**Properties**").

8.      Before the mortgage was transferred to Mr. Cooper, Primary Residential was the servicer on the mortgage secured by the Spanish Fork property ("**Spanish Fork Investment Property**"), and Community Loan Servicing, LLC ("**Community**") was the servicer on the mortgage secured by the Lehi property ("**Lehi Investment Property**").

9.      The Henries cash out refinanced loans on the Properties (the "**Loans**")[4] in the Spring of 2022 to invest into additional investment properties.

10.     The loan documents accompanying both Loans specifically provided that the Loans were for "investment properties," resulting in higher interest rates and—as stated both expressly and suggested by the nature of investment property loans—separate addresses for the Properties securing the Loans than the residence of the applicant and recipient of the Loans (*i.e.*, the Henries).

11.     After the Loans were refinanced, Mr. Cooper became the loan servicer of both Loans.

---

[2] 1011 West 40 North, Spanish Fork, Utah 84660.

[3] 4123 West 1630 North, Lehi, Utah 84043.

[4] The Mr. Cooper loan number for the loan on the Spanish Fork Investment Property is 693415465; the Mr. Cooper loan number for the loan on the Lehi Investment Property is 695814392.

**COMPLAINT**

12.     In the loan agreements for both Loans, the Henries provided the address of their Provo, Utah, residence[5] ("**Provo Residence**") through a standard "Mailing Address Certification" and instructed lenders and loan servicers to issue all notices and correspondence to that Provo Residence mailing address.

13.     The Henries set up automatic payments with Primary Residential and Community, such that each monthly mortgage payment on the Loans would be withdrawn directly from the Henries' bank account.

14.     In May 2022, Primary Residential and Community transferred the servicing of the Loans to Mr. Cooper.

15.     Primary Residential correctly sent a "Notice of Servicing Transfer" for the loan on the Spanish Fork Property to the Henries' Provo Residence. Community also correctly sent a "Notice of Servicing Transfer" for the loan on the Lehi Property to the Henries' Provo Residence.

16.     In these Notices, the Henries were assured that all information associated with the Loans was transferred to Mr. Cooper. The Henries understood this affirmation to mean that their autopayment instructions and information were transferred to Mr. Cooper, along with all other information associated with the Loans.

### *Mr. Cooper's Failure to Provide Adequate Notice*

17.     On or around May 24, 2022, Mr. Cooper incorrectly sent a Notice of Serving Transfer to the Spanish Fork Investment Property, rather than to the Henries' Provo Residence.

---

[5] 750 South Aspen Way, Provo, Utah 84606.

**COMPLAINT**

18.     In July, the Henries sold their Provo Residence and moved to Spanish Fork[6] ("**Spanish Fork Residence**").

19.     The Henries submitted change-of-address information to USPS, directing all mail addressed to the Provo Residence to be forwarded to the Spanish Fork Residence.

20.     Mr. Cooper sent the Henries an email to setup their online account on the Lehi Investment Property loan.

21.     The Henries activated an online account with Mr. Cooper for the Lehi Investment Property Loan and provided Mr. Cooper with the address of the Spanish Fork Residence.

22.      At that time (now July 2022), however, the Henries were unable to make an online Mr. Cooper account for the Spanish Fork Loan because to do so required the new loan number for the Spanish Fork Investment Property, which Mr. Cooper had mistakenly sent to the Spanish Fork Investment Property, rather than to the Henries' Provo Residence.

23.     When the Henries called Mr. Cooper to learn why they did not have access to their Spanish Fork loan on the mrcooper.com portal, Mr. Cooper informed the Henries that they could not assist them with any information associated with the Loans without the loan numbers for the Spanish Fork Property.

24.     Mr. Cooper told the Henries that there was nothing to worry about at that time, and that the Henries should just wait until they received Mr. Cooper's loan numbers by mail.

25.     At that time, the Henries confirmed that their correct email address and phone number were listed on Mr. Cooper's online portal (at mrcooper.com).

---

[6] 2907 East 10 South, Spanish Fork, Utah 84660.

**COMPLAINT**

26.    On or around August 2022, the Henries coordinated with the owners of their Spanish Fork Residence to monitor the Henries' mail.

27.    Up until October 2022, neither the Henries nor the owners of their Spanish Fork Residence ever received any payment delinquency notifications or any other correspondence from Mr. Cooper concerning the Spanish Fork Investment Property, either by mail, email, or phone call.

28.    In October 2022, when doing a routine check on certain accounts, the Henries logged into Mr. Cooper's online portal and saw for the first time that Mr. Cooper that they finally had access to their Spanish Fork loan and that autopay had not been automatically withdrawing monthly mortgage payments on the Spanish Fork Loans. No communication via mail or email was sent saying that the Spanish Fork loan had been added to their Lehi loan login.

29.    On October 3, 2022, the Henries called Mr. Cooper regarding the status of their autopayment, the delinquent loan payments, and Mr. Cooper's failure to provide notice of the delinquent payments.

30.    The Henries learned that Mr. Cooper did not receive the autopayment information they had provided to Primary Residential, which the Henries reasonably expected to have been transferred along with all other mortgage information from Primary Residential and Community to Mr. Cooper.

31.    The Henries also learned that Mr. Cooper had disregarded the primary residence mailing address information that the loan agreements listed for the Henries (*i.e.*, the Henries' Provo Residence), and was instead sending delinquent payment notifications to the Spanish Fork Investment Property—not the Henries' Provo Residence or the Henries' Spanish Fork Residence, as required by the loan documents.

**COMPLAINT**

32.    Despite evidence to the contrary, Mr. Cooper also told the Henries (during a phone call) that it did not have email addresses or phone numbers for either of the Henries for the Spanish Fork Investment Property despite Mr. Cooper having access to the Henries contact information on the loan application and on the other Lehi Investment Property loan.

33.    The Henries requested that Mr. Cooper update its contact information and promptly paid all past due amounts owing under the Loans.

34.    The Henries then consulted with their loan officer as they were approaching the time period to put an interest lock onto their new home and was informed the serious nature of damages that can come from Mr. Cooper's mistakes and reporting inaccurate delinquencies, possibly losing their new home and the secured deposits.

35.    The Henries also provided Mr. Cooper with notices of the errors Mr. Cooper had committed in failing to adequately provide the Henries with certain required notices (including notices of transfer and notices of delinquent loan payments). The Henries also informed Mr. Cooper of their ability and willingness to pay all amounts owing under the Loans in the time the Henries did not have access to the Spanish Fork loan.

36.    After doing so, the Henries requested that Mr. Cooper not report the delinquent payments to credit reporting agencies because it was Mr. Cooper, not the Henries, that failed to act in accordance with the parties' agreement and the applicable regulations by sending delinquent payment notifications to the Henries' Provo Residence or the Henries' Spanish Fork Residence.

37.    Mr. Cooper refused the Henries' request, claiming that its own internal investigation concluded that it had not committed any error, despite sending notices to the incorrect address,

**COMPLAINT**

failing to make contact with the Henries after payments on the Loans became delinquent, and other failures.

38.     Mr. Cooper then provided adverse information about the delinquencies to all of the major credit reporting agencies ("**CRAs**") on November 2, 3, 6, and 22, 2022.

39.     The Henries sent notice of contests to the CRAs, explaining the various errors in Mr. Cooper's information.

40.     As a direct result of Mr. Cooper's reporting inaccurate, incomplete, or false information to the CRAs, the Henries' credit has been substantially and detrimentally impacted.

41.     Upon information and belief, Mr. Cooper's acts and omissions violate their loan agreements with the Henries; the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"), and its implementing regulations, 12 C.F.R. Part 1024; and certain Utah State consumer protection laws.

42.     The full extent of Mr. Cooper's violations is not yet known by the Henries, despite making a good faith effort to learn of such.

43.     The Henries believe that discovery in this matter will reveal grounds for additional claims under RESPA and its applicable regulations—in addition to the causes of action listed herein—and intend to amend and supplement this pleading upon learning of such additional violations.

**COMPLAINT**

## CAUSES OF ACTION

**First Cause of Action: Breach of Contract**
Under Utah Common Law

*Against Defendants*

44.    The Henries incorporate all preceding and succeeding paragraphs of this Complaint as if fully set forth in this section.

45.    The loan agreements between the Henries and Defendants are valid and enforceable contracts

46.    The Henries performed under the loan agreements by providing Defendants accurate financial and personal information, including accurate contact information.

47.    The Henries performed under the loan agreements by providing Primary Residential and Community with correct autopayment information.

48.    The Henries performed under the loan agreements by remitting all payments due to Primary Residential and Community on or before their due dates.

49.    Defendants failed to perform under the loan agreements by, among other things:

    a.    failing to properly transfer and implement all loan information from Primary Residential to Mr. Cooper;

    b.    failing to provide proper notices to the Henries; and

    c.    failing to make required contact with the Henries at required times and through the use of prescribed methods.

50.    Defendants' failures to perform under the loan agreements amount to a material breach of the loan agreements.

**COMPLAINT**

51.    Defendants' breach of the loan agreements has directly and proximately caused injury and damages to the Henries.

52.    As a direct and proximate result of Defendants' breaches, the Henries have been damaged in an amount to be determined at trial, which will include actual damages. Additionally, the Henries seek a judgment award that includes all attorneys' fees and costs to the fullest extent available under the loan agreements.

**Second Cause of Action: Violation of the Real Estate Settlement Procedures Act**
Under 12 U.S.C. §§ 2614, 2605; 12 CFR § 1024.11—Improper Mailing

*Against Mr. Cooper*

53.    The Henries incorporate all preceding and succeeding paragraphs of this Complaint as if fully set forth in this section.

54.    The Henries provided Defendants with the address of their original Provo Residence, which was included in the loan application and other information submitted to or obtained by Defendants.

55.    The Henries provided Defendants with notice of their revised address—the Spanish Fork Residence address—expressly and in writing.

56.    That Defendants had correct addresses for the Henries is evidenced by Defendants having sent certain documents to the Henries by mail on multiple occasions.

57.    However, when it came to vital notifications such as delinquent payment notifications, Defendants failed to place documents in the mail addressed to either the original Provo Residence or the subsequent Spanish Fork Residence, despite express instructions and contractual and regulatory obligations to do so.

**COMPLAINT**

58.    By failing to place correctly addressed documents in the mail, Defendants directly and proximately caused injury to the Henries.

59.    As a direct and proximate result of Defendants' violation of 12 CFR § 1024.11, the Henries have been damaged in an amount to be determined at court, which will include actual damages, as well as statutory damages (to the extent Defendants' acts are discovered to be part of a pattern or practice of noncompliance). Additionally, the Henries seek a judgment award that includes all attorneys' fees and costs to the fullest extent available under the law.

**Third Cause of Action: Violation of the Real Estate Settlement Procedures Act**
Under 12 U.S.C. §2605(b)(1)–(2); (c); 12 CFR § 1024.33(b)(1)—Improper Notice of Transfer

*Against Mr. Cooper*

60.    The Henries incorporate all preceding and succeeding paragraphs of this Complaint as if fully set forth in this section.

61.    Mr. Cooper had a duty to provide the Henries with notices of transfer for any assignment, sale, or transfer of the servicing of the Loans. 12 CFR § 1024.33(b)(1). The notice was required to contain the information described in 12 CFR Section 1024.33(b)(4).

62.    Mr. Cooper also failed to provide the Henries with the required notice because Mr. Cooper failed to provide notice to the correct address within the 15-day time period specified in Section 1024.33(b)(3)(i).

63.    Mr. Cooper failed to provide the Henries with a notice that complied with 12 CFR § 1024.33(b) because Mr. Cooper's notices lacked information required under Section 1024.33(b)(4).

64.    By failing to comply with the notice mandates in 12 CFR § 1024.33, Mr. Cooper caused the Henries injury.

**COMPLAINT**

65.     As a direct and proximate result of Mr. Cooper's failure to provide compliant notice of transfer of loan servicing under 12 CFR § 1024.33(b)(1), the Henries have been damaged in an amount to be determined at court, which will include actual damages, as well as statutory damages (to the extent Mr. Cooper's acts are discovered to be part of a pattern or practice of noncompliance). Additionally, the Henries seek a judgment award that includes all attorneys' fees and costs to the fullest extent available under the law.

**Fourth Cause of Action: Violation of the Real Estate Settlement Procedures Act**
12 USC § 2605(b)(1), (2); 12 CFR § 1024.33(b)(3)—Failure to Provide Notice of Transfer
Fifteen Days After Transfer

*Against Mr. Cooper*

66.     The Henries incorporate all preceding and succeeding paragraphs of this Complaint as if fully set forth in this section.

67.     Under 12 CFR § 1024.33(b)(3), Mr. Cooper had a duty to mail the notice of transfer to the mailing address listed by the Henries in the mortgage loan documents, and, if the Henries notified Mr. Cooper of a new address pursuant to Mr. Cooper's requirements for receiving a notice of a change of address, mail the notice to the new address.

68.     Under 12 CFR § 1024.33(b)(3)(i), Mr. Cooper had a duty to mail the notice of transfer to the Henries "not less than 15 days after the effective date of the transfer of the servicing of the mortgage loan."

69.     Mr. Cooper failed to provide the Henries with the required notice because Mr. Cooper failed to provide notice to the correct address, as required by 12 CFR § 1024.33(b)(3), within the 15-day time period specified in Section 1024.33(b)(3)(i).

**COMPLAINT**

70.     Mr. Cooper failed to provide the Henries with a notice that complied with 12 CFR § 1024.33(b)(3) because Mr. Cooper's notices were sent to the incorrect address.

71.     By failing to comply with the notice mandates in 12 CFR § 1024.33(b)(3), Mr. Cooper caused the Henries injury by failing to provide required notices to the Henries at the address provided to Mr. Cooper within the statutorily required fifteen days.

72.     As a direct and proximate result of Mr. Cooper's failure to provide compliant notice of transfer of loan servicing under 12 CFR § 1024.33(b)(3), the Henries have been damaged in an amount to be determined at court, which will include actual damages, as well as statutory damages (to the extent Mr. Cooper's acts are discovered to be part of a pattern or practice of noncompliance). Additionally, the Henries seek a judgment award that includes all attorneys' fees and costs to the fullest extent available under the law.

**Fifth Cause of Action: Violation of the Real Estate Settlement Procedures Act**
Under 12 USC § 2605(e); 12 CFR § 1024.35(e)—Failure to Conduct a Reasonable Investigation and Provide a Compliant Response to Notices of Error

*Against Mr. Cooper*

73.     The Henries incorporate all preceding and succeeding paragraphs of this Complaint as if fully set forth in this section.

74.     The Henries submitted a timely notice of error ("**NOE**") to Mr. Cooper in October 2022 that described several servicing errors ("**October 2022 NOE**").

75.     Mr. Cooper submitted a response on November 8, 2022, denying that any errors had occurred. However, this response lacked any substantive explanation or documentation addressing the key facts presented in the October 2022 NOE.

**COMPLAINT**

76.     The Henries submitted an additional NOE on January 11, 2023, rebutting Mr. Cooper's claim that an Request for Information was overbroad, thus sent this NOE as both a follow-up Request for Information and a Notice of Error specifically requesting certain loan documents and servicing records ("**January 2023 NOE**").

77.     Mr. Cooper acknowledged receipt of the NOE on January 25, 2023, but failed to issue a substantive response to the January 2023 NOE request within thirty business days.

78.     The Henries submitted a third NOE on February 3, 2023, further substantiating the original claims and supplying additional documentary evidence, including loan documents, loan application, mailing address certification, and a timeline of communications ("**February 2023 NOE**").

79.     Mr. Cooper acknowledged receipt of the February 2023 NOE and issued a response on March 15, 2023, which again summarily denied any error, failed to substantively address or refute the newly submitted documentation, and merely reiterated its original denial of any servicing errors.

80.     The Henries submitted a fourth NOE on April 11, 2025, restating the outstanding errors and detailing Mr. Cooper's continued failure to respond to prior notices with a good faith and legally compliant investigation ("**April 2025 NOE**"). This NOE cited specific failures by Mr. Cooper to:

      a.  investigate the address discrepancies in light of the original loan application and mailing address certification;

      b.  respond with evidence or documentation supporting the Henries' claim of errors committed by Mr. Cooper.

**COMPLAINT**

      c.   acknowledge or correct its mischaracterization of the mailing address received from PRMI; or

      d.   address other unresolved issues raised in prior NOEs and correspondence.

81.     In May 2025, Mr. Cooper replied to the April 2025 NOE stating that the notice was "duplicative" of prior communications and that it was "not required to respond."

82.     Under 12 C.F.R. § 1024.35(g)(1)(i), a servicer may only decline to respond to a purportedly duplicative NOE if no new and material information has been provided. The Henries' fourth NOE included new and material information and documentation not previously reviewed or addressed by Mr. Cooper.

83.     More generally, under 12 C.F.R. § 1024.35(e)(1)(i), a servicer is required to respond to a NOE by either "(A) Correcting the error or errors identified by the borrower . . . ; or (b) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination . . . ."

84.     Mr. Cooper's refusal to conduct a reasonable investigation and provide a reasonably substantive statement of the reasons for denying any error constitutes a violation of 12 C.F.R. § 1024.35(e)(1)(i)(B), which mandates a "written notification that includes a statement that the servicer has determined that no error occurred, [and] a statement of the reason or reasons for his determination . . . ." Mr. Cooper also failed to comply with 12 C.F.R. § 1024.35(e)(4) by not providing "copies of the documents and information relied upon by the servicer in making its determination that no error occurred . . . ."

**COMPLAINT**

85.      As a direct and proximate result of Mr. Cooper's failure to conduct a reasonable investigation and issue compliant responses, the Henries suffered actual damages, including credit damage, loss of financing opportunities, emotional distress, and legal expenses incurred in attempting to correct Mr. Cooper's errors through proper channels.

86.      The Henries also seek statutory damages to the extent Mr. Cooper's conduct is deemed to constitute a pattern or practice of noncompliance.

**Sixth Cause of Action: Violation of the Real Estate Settlement Procedures Act**
Under 12 USC § 2605(e)(3); 12 CFR § 1024.35(i)—Failure to Provide Sixty-Day Freeze

*Against Mr. Cooper*

87.      The Henries incorporate all preceding and succeeding paragraphs of this Complaint as if fully set forth in this section.

88.      The Henries provided Mr. Cooper a notice of Mr. Cooper's numerous errors on or around October 26, 2022, at the latest.

89.      Mr. Cooper had a legal duty under 12 CFR § 1024.35(i) to refrain from furnishing adverse information for sixty days to any CRA regarding any payment that is the subject of the Henries' notice of error.

90.      Mr. Cooper violated 12 CFR § 1024.35(i) by furnishing adverse information about payments in dispute to CRAs on November 2, 3, 6, and 22, 2022, which payments had been addressed in the Henries' notice of errors.

91.      As a direct and proximate result of Mr. Cooper's failure to comply with its obligations under 12 CFR § 1024.35(i), the Henries have been damaged in an amount to be determined at court, which will include actual damages, as well as statutory damages (to the extent Mr. Cooper's acts are discovered to be part of a pattern or practice of noncompliance).

**COMPLAINT**

Additionally, the Henries seek a judgment award that includes all attorneys' fees and costs to the fullest extent available under the law.

### Seventh Cause of Action: Violation of the Real Estate Settlement Procedures Act
Under 12 USC § 2605(e); 12 CFR § 1024.36(d)(1) and (2)—Failure to Properly Respond to Requests for Information

*Against Mr. Cooper*

92.     The Henries incorporate all preceding and succeeding paragraphs of this Complaint as if fully set forth in this section.

93.     On or about January 11, 2023, the Henries submitted a written request for information ("**RFI**") to Mr. Cooper, specifically requesting certain loan documents and servicing records.

94.     Mr. Cooper acknowledged receipt of the RFI on January 25, 2023, but failed to issue a substantive response to the request within thirty business days.

95.     Mr. Cooper later claimed, in a 2025 response, that the January 11, 2023, RFI was duplicative of prior requests from October 26, 2022.[7]

96.     However, the October 26, 2022, RFI requested a complete servicing file and Mr. Cooper rejected the request as overly broad. When the Henries provided a narrower and more specific request in the January 11, 2023 RFI, Mr. Cooper never responded.

97.     Under 12 C.F.R. § 1024.36(f)(1)(i), Mr. Cooper may not refuse to respond to a request for information as "duplicative" unless it is substantially the same as a prior request for

---

[7] Mr. Cooper also claimed in that 2025 response that the February 7, 2023 request was duplicative of the January 11, 2023 RFI. That request from February 7, however, was an NOE, not an RFI, and therefore addressed different legal obligations.

**COMPLAINT**

which the servicer has already complied, and even then only if no new and material information is provided.

98.    Mr. Cooper failed both prongs of that standard—first, by failing to provide any substantive response to the January 11, 2023, RFI, and second, by disregarding the fact that the January 11, 2023, RFI was a specific and narrowed follow-up that included a new request for specific content and context.

99.    By failing to comply with its obligations under 12 C.F.R. § 1024.36(d)(1) and (2), and by improperly invoking the duplicative request exemption without legal basis, Mr. Cooper committed a clear violation of RESPA and its implementing regulations.

100.    As a direct and proximate result of Mr. Cooper's violation of 12 C.F.R. § 1024.36, the Henries suffered actual damages, including but not limited to credit damage, emotional distress, financial uncertainty, and increased legal expenses in attempting to enforce their rights. The Henries also reserve the right to seek statutory damages to the extent this conduct is deemed to reflect a pattern or practice of noncompliance.

101.    The Henries seek a judgment awarding all available damages, including actual damages, statutory damages, and attorney's fees and costs.

**Eighth Cause of Action: Violation of the Real Estate Settlement Procedures Act**
12 CFR § 1024.39(a)—Failure to Provide Live Contact

*Against Mr. Cooper*

102.    The Henries incorporate all preceding and succeeding paragraphs of this Complaint as if fully set forth in this section.

103.    Mr. Cooper had a duty under 12 CFR § 1024.39(a) to establish or make good faith efforts to establish live contact with the Henries no later than the thirty-sixth day of the Henries'

**COMPLAINT**

delinquency and again no later than thirty-six days after each payment due date so long as the Henries remained delinquent.

104.    Mr. Cooper had the Henries' correct phone number and email address in the original loan application documents. Mr. Cooper had copies of the correct phone number and email address from servicing the Lehi Loan. Yet Mr. Cooper made no effort to set up a call or establish live contact with the Henries.

105.    Mr. Cooper did not call or make any other kind of live contact with the Henries within thirty-six days of the initial delinquency, and did not call or make any other kind of live contact with the Henries within thirty-six days of subsequent payment becoming due while still in delinquency.

106.    As a direct and proximate result of Mr. Cooper's failure to make live contact with the Henries after delinquent payments (as it was required to do under 12 CFR § 1024.39(a)), the Henries have been damaged in an amount to be determined at court, which will include actual damages, as well as statutory damages (to the extent Mr. Cooper's acts are discovered to be part of a pattern or practice of noncompliance). Additionally, the Henries seek a judgment award that includes all attorneys' fees and costs to the fullest extent available under the law.

**Ninth Cause of Action: Violation of the Real Estate Settlement Procedures Act**
12 CFR § 1024.39(b)(1)—Failure to Provide Written Notice for Early Intervention

*Against Mr. Cooper*

107.    The Henries incorporate all preceding and succeeding paragraphs of this Complaint as if fully set forth in this section.

108.    Mr. Cooper had a duty under 12 CFR § 1024.39(b)(1) to provide written notice of early intervention measures to the Henries no later than the forty-fifth day of the Henries'

**COMPLAINT**

delinquency and again no later than forty-five days after each payment due date, so long as the Henries remained delinquent.

109.    That required written notice must include a statement encouraging the borrower to contact the servicer, the phone number to access servicer personnel, a description of loss mitigation options, instructions on how to obtain more information about loss mitigation options, and the website to access homeownership counselors.  12 CFR § 1024.39(b)(2).

110.    Mr. Cooper had the Henries' mailing address in the original loan agreement documents, yet failed to send the required written notice to the Henries.

111.    Mr. Cooper also had the Henries' email address, but also failed to send the required written notice through email.

112.    Mr. Cooper did not provide the required written notice to the Henries within forty-five days of the initial delinquency, and did not provide the Henries with written notice within forty-five days of subsequent payments becoming due.

113.    As a direct and proximate result of Mr. Cooper's failure to send written notice to the Henries after delinquent payments (as it was required to do under 12 CFR § 1024.39(b)(1)), the Henries have been damaged in an amount to be determined at court, which will include actual damages, as well as statutory damages (to the extent Mr. Cooper's acts are discovered to be part of a pattern or practice of noncompliance). Additionally, the Henries seek a judgment award that includes all attorneys' fees and costs to the fullest extent available under the law.

**COMPLAINT**

**Tenth Cause of Action: Violation of the Real Estate Settlement Procedures Act**
Under 12 CFR § 1024.40—Failure to Provide Continuity of Contact

*Against Mr. Cooper*

114.    The Henries incorporate all preceding and succeeding paragraphs of this Complaint as if fully set forth in this section.

115.    Mr. Cooper is required by 12 C.F.R. § 1024.40 to maintain policies and procedures reasonably designed to ensure that borrowers who become delinquent are assigned personnel who can assist them with loss mitigation options, provide accurate information regarding their loan status, and explain how to submit NOEs or RFIs.

116.    Beginning in July 2022, the Henries were unable to make timely mortgage payments due to Mr. Cooper's failure to provide them with a loan number and access to their online account for the Spanish Fork Investment Property.

117.    Despite contacting Mr. Cooper by phone, the Henries were denied access and told to wait for documentation that Mr. Cooper mailed to the wrong address—an address associated with an investment property, not the Henries' designated mailing address.

118.    The Henries made multiple attempts via telephone to escalate their concerns and obtain guidance from servicing personnel.

119.    Mr. Cooper failed to provide meaningful live contact with personnel equipped to address the issue.

120.    Instead, Mr. Cooper merely directed the Henries to send their concerns to a general email address: researchincoming@mrcooper.com.

**COMPLAINT**

121.    This failure to provide a live contact or any assigned personnel directly violated the requirements of 12 C.F.R. § 1024.40(b)(4), which obligates servicers to ensure that delinquent borrowers are informed about how to submit NOEs under § 1024.35 or RFIs under § 1024.36.

122.    The Henries learned about NOEs and RFIs on their own when researching on what legal protections they have in October 2022—too late to avoid the damage done by Mr. Cooper's failure to comply with 12 C.F.R. § 1024.40 .

123.    Additionally, Mr. Cooper failed to assign personnel by the forty-fifth day of delinquency, as mandated under 12 C.F.R. § 1024.40(a)(1).

124.    The Henries were never notified of any such personnel, nor did they receive adequate or timely responses from individuals who could assist them in resolving the delinquency or pursuing loss mitigation.

125.    Because of Mr. Cooper's failure to provide the required continuity of contact, the Henries were unable to correct the payment issue in a timely manner.

126.    Later, by disregarding the Henries' attempts to mitigate the damages caused by Mr. Cooper, Mr. Cooper reported three months of late payments to CRAs, resulting in material damage to the Henries' credit and causing financial and emotional distress.

127.    As a direct and proximate result of Mr. Cooper's violation of 12 C.F.R. § 1024.40, the Henries suffered actual damages, including but not limited to credit damage, emotional distress, financial uncertainty, and increased legal expenses in attempting to enforce their rights. The Henries also reserve the right to seek statutory damages to the extent this conduct is deemed to reflect a pattern or practice of noncompliance.

**COMPLAINT**

128.    The Henries seek a judgment awarding all available damages, including actual damages, statutory damages, and attorney's fees and costs.

**Eleventh Cause of Action: Utah State Consumer Sales Practices Act**
Under Utah Code § 13-11-19

*Against Mr. Cooper*

129.    The Henries incorporate all preceding and succeeding paragraphs of this Complaint as if fully set forth in this section.

130.    Mr. Cooper's loan servicing qualifies as a "consumer transaction" under Utah Code § 13-11-3(2)(a).

131.    By way of its participation in consumer transactions, Mr. Cooper is a "supplier" under the Utah Code § 13-11-3(6).

132.    The Utah State Consumer Sales Protection Act ("**UCSPA**") prohibits deceptive acts or practices by a supplier in connection with a consumer transaction.

133.    Specifically, a supplier commits a deceptive act or practice under Utah Code § 13-11-4 if the supplier knowingly or intentionally makes false representations about the consumer's creditworthiness, credit standing, or credit capacity.

134.    Mr. Cooper violated the Utah Code § 13-11-4 by improperly causing negative, inaccurate, incomplete, and misleading information about the Henries' creditworthiness, credit standing, or credit history to be reported to CRAs.

135.    Improperly causing negative information to be included in a credit report qualifies as the type of threshold "loss" Utah Code § 13-11-19 requires a consumer to demonstrate as a result of a violation of the UCSPA.

**COMPLAINT**

136.    Mr. Cooper's violations of RESPA and subsequent unwarranted reporting of inaccurate or misleading information to the CRAs have caused the Henries material damage to their credit and have caused financial and emotional distress.

137.    The Henries, therefore, are consumers who have suffered a cognizable loss as a result of Mr. Cooper's violation of the UCSPA.

138.    As a direct and proximate result of Mr. Cooper's violation of Utah Code § 13-11-19, the Henries suffered actual damages, including but not limited to credit damage, emotional distress, financial uncertainty, and increased legal expenses in attempting to enforce their rights. The Henries also reserve the right to seek statutory damages to the extent this conduct is deemed to reflect a pattern or practice of noncompliance.

139.    The Henries seek a judgment awarding all available damages, including actual damages, statutory damages, and attorney's fees and costs.

**Twelfth Cause of Action: Utah Consumer Credit Code**
Under Utah Code § 70C-7-107

*Against Mr. Cooper*

140.    The Henries incorporate all preceding and succeeding paragraphs of this Complaint as if fully set forth in this section.

141.    Mr. Cooper is a "creditor" under Utah Code § 70C-7-107(1)(a)

142.    Mr. Cooper had a duty under § 70C-7-107(2) to provide written notice of its reporting of negative credit information to CRAs within thirty days after the day on which Mr. Cooper submitted the negative credit report to CRAs.

**COMPLAINT**

143.    The written notice must have included the following statement: "As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations."

144.    Mr. Cooper had the Henries' mailing address in the original loan agreement documents, yet failed to send the required written notice to the Henries.

145.    Mr. Cooper also had the Henries' email address, but also failed to send the required written notice through email (to the extent such electronic notification was permitted pursuant to Utah Code § 70C-7-107(3)(a)(ii)(C)).

146.    Mr. Cooper failed to provide the Henries with the notice required under Utah Code § 70C-7-107(3)(a) before submitting negative credit information to CRAs.

147.    As a direct and proximate result of Mr. Cooper's failure to send written notice to the Henries after delinquent payments (as it was required to do under Utah Code § 70C-7-107), the Henries have been damaged in an amount to be determined at court, which will include actual damages, as well as statutory damages under Utah Code § 70C-7-107(4)(a) and (b). Additionally, the Henries seek a judgment award that includes all attorneys' fees and costs to the fullest extent available under the law.

## REQUEST FOR RELIEF

WHEREFORE, the Henries seek an order from this Court providing relief in the form of a judgment against Defendants for actual compensatory damages in an amount to be determined at trial, as well as all statutory damages the Henries are entitled to as a matter of law. The Henries further seek an award of noneconomic damages arising out of Defendants' violations of federal

**COMPLAINT**

consumer lending laws. The Henries seek such other and further relief against Defendants, both general and special, legal and equitable, which the Court deems proper and just.

DATED: May 22, 2025

**PARR BROWN GEE & LOVELESS**
Martin K. Banks
Chaunceton Bird

*Attorneys for Plaintiffs*

**COMPLAINT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2025, I electronically filed the foregoing **COMPLAINT** with the Clerk of the Court using the CM/ECF system. I will effectuate service of process in accordance with Rule 4 of the Federal Rules of Civil Procedure on all named Defendants by serving their registered agents.

PARR BROWN GEE & LOVELESS

Chaunceton Bird

**COMPLAINT**